UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY DUANE MOSES,

            Petitioner(s),

    v.

ALICE PAYNE,

            Respondent(s).

NO. C06-1105P

ORDER ADOPTING REPORT &
RECOMMENDATION

The above-entitled Court, having received and reviewed:

1.      Report and Recommendation (Dkt. No. 22)

2.      Amended Objections to Report and Recommendation (Dkt. No. 25)

and all exhibits and declarations attached thereto, makes the following ruling:

    IT IS HEREBY ORDERED that the Report and Recommendation is hereby ADOPTED;

Petitioner's habeas petition is DENIED, and this matter is DISMISSED.

**Background**

    The factual and procedural history of this case is described in detail in the Report and

Recommendation ("R&R"), at 1 - 6, and the Court will not repeat it here.  Unless otherwise noted, all

citations hereafter are to the Administrative Record (AR).

    In 2003, Petitioner was convicted of second-degree murder of his wife Jennifer Moses and

unlawful first-degree firearm possession and received an exceptional sentence of 420 months.  (Dkt.

10, Ex. 1.)  The Washington Court of Appeals affirmed the conviction, but reversed the exceptional

sentence and remanded for re-sentencing.  (Id., Ex. 3.)  In September 2006, the trial court re-

sentenced Petitioner to 335 months.  (Dkt. 12, Ex. 1.)  Petitioner petitioned for review of the Court of

**ORD ADOPTING
RPT & RECOMM - 1**

1  Appeals ruling, and the Washington Supreme Court denied the petition for review without comment.

2  (Id., Ex. 5.)

3  **Discussion**

4  Petitioner's habeas petition raises three grounds for relief:

5  1.  Denial of his Sixth Amendment right to confrontation by the admission of testimonial

6  hearsay.

7  2.  Denial of his Sixth and Fourteenth Amendment rights by exclusion of evidence

8  supporting Petitioner's suicide theory of defense.

9  3.  Denial of his Sixth Amendment right to jury trial by admission of opinion testimony on

10  the issue of guilt.

11  1.  Sixth Amendment Right to Confront Witnesses

12  Evidence of a previous domestic violence incident was admitted at trial.  An emergency room

13  doctor and social worker who saw the deceased at the hospital in November 2001 testified that

14  Jennifer Moses stated that Petitioner hit and/or kicked her in the face. (See Dkt. 10, Ex. 6 at 15 and

15  64-65.)  The social worker also testified that Petitioner's younger son stated that Petitioner kicked

16  Jennifer Moses in the head and that they regularly argued. (Id. at 66-67.)  Petitioner argues this

17  evidence constituted impermissible testimonial hearsay because Jennifer had every reason to expect the

18  doctor and social worker would be called as witnesses to testify at trial on charges arising from the

19  incident.  At issue is whether the admission of this testimonial hearsay denied Petitioner the Sixth

20  Amendment right to confront witnesses against him in violation of Crawford v. Washington, 541 U.S.

21  36 (2004), and Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266 (2006).

22  Magistrate Judge Theiler's Report and Recommendation cited Bockting v. Bayer, 399 F.3d

23  1010, 1013-21 (9th Cir. 2005) for the proposition that Crawford applies retroactively to collateral

24  proceedings.  R&R at 12.  However, this case has been overruled by the Supreme Court, in Wharton

25

26  **ORD ADOPTING**
    **RPT & RECOMM - 2**

v. Bockting, 127 S.Ct. 1173 (2007).  Wharton held that Crawford is a new rule of criminal procedure that applies only to cases that are still on direct review. Id. at 1180.  The Washington Supreme Court denied Petitioner's petition for review on May 31, 2006.  As this case was still pending on direct review by the time Crawford was decided on March 8, 2004, Crawford still applies  in Petitioner's case.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.  Testimonial hearsay statements are barred under the Confrontation Clause unless the declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 68.  One formulation of testimonial statements includes "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]'" Id. at 51-52 (omission in original) (quoted sources omitted).  Federal courts have recognized that "Crawford at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial." United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).  In Davis, the Supreme Court found nontestimonial statements to be those "made . . . under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency[,]" while testimonial statements were those made under circumstances "objectively indicat[ing] that there is no such ongoing emergency [where] the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis, 126 S.Ct. at 2273-74 (emphasis added).

Applying the Crawford/Davis test, the Magistrate Judge correctly concluded the decedent's statements to Appleton were non-testimonial.  As the Washington Court of Appeals noted, courts addressing Crawford's impact on statements admitted under the medical diagnosis and treatment

**ORD ADOPTING**
**RPT & RECOMM - 3**

1  exception focus on the <u>purpose</u> of the declarant's encounter with the health care provider. (<u>See</u> Dkt.

2  No. 10, Ex. 3 at 10).  Dr. Appleton was not involved in the investigation of the assault and was not

3  working in conjunction with police or governmental officials to develop testimony.  Petitioner does not

4  point to anything in the record indicating the deceased had any reason to believe her statements to Dr.

5  Appleton would be used at a trial.  Dr. Appleton's testimony is admissible under <u>Crawford</u>.

6       The decedent's statements to the social worker could be impermissible testimonial hearsay

7  under <u>Crawford.</u> (<u>See</u> Dkt. No. 10, Ex. 3 at 13).  However, even if her statements to the social worker

8  are testimonial hearsay, the error was harmless.  Relief may be granted on a federal habeas corpus

9  petition only if the state court erred and the error had a "substantial and injurious effect or influence"

10  in determining the jury's verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623, 637 (1993). This Court

11  must ask whether "the error substantially influenced the jury's decision[.]" <u>O'Neal v. McAninch</u>, 513

12  U.S. 432, 436 (1995).  Only if in "grave doubt" as to the effect of the error can the court rule that an

13  error was harmful. <u>Id.</u> at 436-37.

14       Petitioner contends that introduction of this testimony was not harmless because the only other

15  testimony identifying him as the November 2001 assailant was the 9-1-1 tape and the testimony of the

16  deceased's stepfather.  This is not the case.  In addition to the 9-1-1 tape and the stepfather's

17  testimony, there was further independent evidence tending to establish Petitioner as the assailant: the

18  nature of the injuries, expert testimony that decedent's broken jaw was not the result of a slip and fall,

19  the description of the responding officer concerning both the injuries and the state of the residence

20  (including a phone ripped from the wall), and testimony of a history of arguments between Petitioner

21  and his wife.  (Dkt. 10, Ex. 3 at 14).  None of this testimony violated <u>Crawford</u>.  Furthermore, because

22  the deceased's statement to the E.R. doctor is not testimonial, her statement to Dr. Appleton

23  identifying Petitioner as her assailant is also admissible.  In light of this cumulative evidence, any error

24

25

26  **ORD ADOPTING**
    **RPT & RECOMM - 4**

1   in the admission of Jennifer's statement to the social worker did not have a substantial and injurious

2   effect on the jury's decision-making process.

3           Nor was the admission of the statements made by Petitioner's son to the social worker

4   contrary to clearly established federal law. While the state court reasoned that this statement was

5   admissible to show why the social worker contacted CPS, Petitioner argued that its admission violated

6   the principle that evidence is not admissible to establish a non-hearsay purpose not relevant to any

7   issue at trial.  State v. Aaron, 57 Wn.App. 277, 280-81 (1990).  The evidence, however, was relevant

8   at trial.

9           Crawford clarified that the Confrontation Clause "does not bar the use of testimonial

10  statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S.

11  at 59 n.9. The record does not support Petitioner's argument concerning the relevancy of the CPS

12  referral.  Petitioner asserts that the prosecution opened the door to the CPS issue at trial, but this issue

13  was a significant part of Petitioner's opening argument:

14          That evening Jennifer went to the hospital with a broken jaw. CPS got involved;
            an added pressure. CPS got involved about the problems that they were told
15          about from the hospital because of the alcohol involved, there were some
            barbiturates or drugs found in her system, and also they were concerned about
16          domestic violence. CPS got involved and Jeff went into treatment.

17  (Id., Ex. 10 at 28-29.)  Prior to the social worker's testimony, Petitioner had also on cross examination

18  of Dr. Appleton briefly raised the issue of referring the children to CPS. (Dkt. No. 10, Ex. 11 at 53-

19  54). The trial court correctly found that the "door was opened" by the defense (a finding agreed to by

20  defense counsel; see Ex. 11 at 86), and allowed the social worker's testimony to explain the referral to

21  CPS.

22  2.      Sixth and Fourteenth Amendment Rights to Exclusion of Evidence

23          At trial, Petitioner argued that his wife had taken her own life.  As his second ground for relief,

24  Petitioner cites the trial court's exclusion of evidence regarding the defense's suicide theory

25

26  **ORD ADOPTING
    RPT & RECOMM - 5**

(specifically, the testimony of Dr. Wilson, autopsy photographs of the deceased and certain excerpts from decedent's diary) as a denial of his constitutional right to appear and defend at trial and to present evidence in his own behalf.

"Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990) (quoting Lincoln v. Sunn, 807 F.2d 805, 816 (9th Cir. 1987)).  The state court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights. Id.  Magistrate Judge Theiler correctly relied on a five-part balancing test to determine whether exclusion of evidence reaches constitutional proportions and violates the Sixth  Amendment or Due Process Clause. United States v. Duran, 41 F.3d 540, 545 (9th Cir. 1994). The five factors are:

> (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and      (5) whether it constitutes a major part of the attempted defense.

The Court balances the importance of the evidence against the state interest in exclusion.  Tinsley, 895 F.2d at 530.

Dr. Wilson's testimony concerning the decedent's suicidal tendencies was properly excluded. Four other medical providers who treated Jennifer had testified about her depression, her suicidal ideation, and her alcohol and drug addiction (Dkt. 10, Ex. 3 at 19); Dr. Wilson's testimony on this topic would have been cumulative.  The issue of "risk of suicide" was within the common understanding of the jury, so the doctor's testimony was also of low probative value.

Dr. Wilson had not treated Jennifer Moses. (Dkt. No. 10, Ex. 11 at 104-08) and could not testify to a reasonable degree of medical certainty that she was suicidal the night of her death. (Id. at 139).  Both of these facts impact the probative value of his evidence.  He could only testify that she was in the category of people for whom the risk of suicide is greater than the average person, and state to a reasonable degree of medical certainty that she continued to suffer major depression at the time of

1   her death.  (Id.)  Petitioner elicited the same information regarding depression and suicide from other

2   medical professionals. (Dkt. 10, Ex. 3 at 20).  Because Dr. Wilson's testimony would have been both

3   cumulative and of limited probative value, exclusion of his evidence does not rise to constitutional

4   proportions under the five-factor balancing test.

5        Petitioner also wished to introduce an autopsy photograph showing the deceased's emaciated

6   body as evidence of the extent of her eating disorder. (Dkt. No. 10, Ex. 3 at 20).  But multiple

7   witnesses had testified to his wife's 20-pound weight loss in the months prior to her death, Petitioner

8   questioned his medical expert about her weight loss, and the trial court had also admitted other

9   photographs showing decedent's upper torso. (Id.) The trial court properly held that the probative

10  value of the photograph was minimal and did not outweigh its prejudicial effect.  Petitioner offered no

11  evidence that the autopsy photo would have differed from the other photographs or witness testimony.

12  The photograph would have been merely cumulative and its exclusion does not reach constitutional

13  proportions.

14       Excerpts from the deceased's private paper diary, although perhaps relevant, would also have

15  been merely cumulative of other evidence.  The trial court admitted numerous journal entries pertinent

16  to Petitioner's suicide defense. (See Dkt. 10., Ex. 9 at 19: "We have had an extensive discussion of

17  Ms. Moses' written journal. . . . I will note again what I did allow were her statements about

18  depression, suicidal thoughts, and the like.")  Petitioner's counsel used and emphasized these journal

19  entries in closing arguments. (See Id., Ex. 15 at 67-70, 70-71).  Excerpts from journals more than four

20  months prior to death would not have been probative of the deceased's state of mind on the night she

21  died. (Id., Ex. 3 at 21). The trial court also admitted relevant evidence related to Jennifer's depression

22  and suicidal ideation for the entire year before her death. (Id., Ex. 3 at 21). For these reasons,

23  Jennifer's private paper journal entries would have been merely cumulative, not probative,  and their

24  exclusion did not reach constitutional proportions.

25

26  **ORD ADOPTING
    RPT & RECOMM - 7**

3.  Sixth Amendment Right to Jury Trial

As his third ground for relief, Petitioner asserts denial of his Sixth Amendment right to a jury trial based on the admission of opinion testimony as to guilt.  See, e.g., United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).  Petitioner challenges testimony from Dr. Richard Harruff, ballistics expert Evan Thompson, and social worker Tamara Muller on this basis.

Dr. Harruff testified to his opinion that the death was a homicide.  Because Dr. Harruff relied on factors outside his area of expertise, Petitioner asserts, this testimony impermissibly invaded the province of the jury.  As "areas outside of his expertise," Petitioner cites Dr. Harruff's review of portions of Jennifer's diary and statements made by Petitioner, and his testimony that he believed Mr. Moses was not straightforward after the death.  Had Dr. Harruff only relied on objective factors, Petitioner argues, he could not have reached the conclusion he did .  Petitioner notes Dr. Harruff's testimony that most suicide gunshots result in contact wounds (Dkt. No. 10, Ex. 16 at 18), and forensic pathologist Emmanuel Lacsina's testimony that a contact wound supported a conclusion of suicide. (Dkt. No. 10, Ex. 14 at 27).

Simply because another expert disagrees with Dr. Harruff's analysis does not demonstrate that Dr. Harruff relied on factors outside his area of expertise. Viewed in its entirety, this expert's testimony is neither inconsistent nor based on areas outside his expertise.  Dr. Harruff stated that a gunshot wound to the back of the head is usually homicide, whether or not it is a contact wound. (Dkt. No. 10, Ex. 16 at 18).  Dr. Harruff testified that he relied primarily on forensic or objective factors including the fact that it was a contact wound on a particular body location, that the orientation of the weapon was "sight basically up[,]" and that Mr. Thompson, the ballistics expert, indicated that a derringer trigger was difficult to pull. (Id. at 29-30.)  Dr. Harruff was also careful to distinguish his testimony from the role of the jury and testified it was not his role to determine whether a death was a

1   murder. (Dkt. No. 10, Ex. 16 at 34-35).  Dr. Harruff did not improperly render an opinion as to

2   Petitioner's guilt.

3        Mr. Thompson, the ballistics expert, also did not improperly render an opinion as to

4   Petitioner's guilt.  It is true Mr. Thompson testified that most contact wounds are suicide and that

5   suicide was possible in this case. (Dkt. No. 10, Ex. 17 at 17).  It is not true, as Petitioner claims, that

6   Mr. Thompson pointed to no explanatory theory in support of his conclusion or of any experience or

7   training which would lead to his conclusion.  While conceding the possibility of a self-inflicted wound,

8   Thompson testified that the death was a homicide based on factors such as the "muzzle stamp, the

9   location and the sight orientation," the strength necessary to pull the trigger, and based on his

10  experience, training, and analysis of photographs and the weapon. (Dkt. 10, Ex. 17 at 19-22).  This

11  expert's opinion was properly rendered and admitted.

12       Finally, Ms. Muller's testimony that a domestic violence victim is most likely to be killed when

13  she leaves home was not an improper opinion as to Petitioner's guilt.  Ms. Muller, rather than making

14  an opinion particular to Petitioner, merely responded to a general question regarding her experience

15  giving advice to victims of domestic violence by stating that she "very seldom" told victims of

16  domestic violence to leave the situation immediately, because they are most likely to be killed when

17  they leave. (Dkt. No. 10, Ex. 11 at 83).  This was within her expertise and not a comment on

18  Petitioner's guilt or innocence.

19                                    **Conclusion**

20       Because neither decedent's statements to the emergency room doctor nor Petitioner's son's

21  statements to the social worker were testimonial, and the admission of the deceased's statements to

22  the social work was at most harmless error, Petitioner's Sixth Amendment right to confrontation was

23  not violated on <u>Crawford</u> grounds.  Petitioner's Sixth and Fourteenth Amendment rights to appear and

24  defend at trial, and to compulsory process and due process of law were not violated by the trial court's

25

26  **ORD ADOPTING**
    **RPT & RECOMM - 9**

exclusion of Dr. Wilson's testimony, Jennifer's autopsy photograph, and portions of Jennifer's private paper diary. Even if the exclusion of this evidence was in error, the error did not reach constitutional proportions given the cumulative nature and low probative value of the evidence. Petitioner's Sixth Amendment right to a jury trial was not violated by the admission of opinion testimony from Dr. Harruff, Mr. Thompson, and Ms. Muller.

Magistrate Judge Theiler's Report and Recommendation is hereby ADOPTED, the petition DENIED and the case DISMISSED with prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:  April __10_, 2007

Marsha J. Pechman
U.S. District Judge

ORD ADOPTING
RPT & RECOMM - 10